{¶ 89} I respectfully dissent from the opinion of the majority because assignments of error four and five should be sustained.
{¶ 90} The majority has held that the trial court exercised discretion properly in permitting the hearsay statements of a five-year-old child, Jamamil, regarding the matter in which his sister received injuries from which she died. The basis for the majority opinion is that the statements of Jamamil, which were made to a hospital social worker who entered a written summary of his statements into the hospital records, was admissible under the hearsay exception contained in Evid.R. 803(4), which creates an exception for statements made for purposes of medical diagnosis or treatment. The statements of Jamamil regarding Layla did not pertain to Layla's treatment. While it is recognized that family members may fall within Evid.R. 803(4) when they are describing injuries to a young child, it is an erroneous expansion of that doctrine to extend the exclusion to statements made by a five-year-old sibling who at times seemed uncertain about what actually took place.
{¶ 91} More importantly, however, the statements were primarily related to the actions of defendant in allegedly causing those injuries, rather than to anything that would lead to better treatment or diagnosis of Layla's injuries. There is nothing in Dr. Hamilton's testimony to support a finding that the young child's statements concerning the source of his sister's injuries were relevant either to the diagnosis or treatment of his sister's injuries. Pediatric surgeon, Dr. Arca, spoke to Jamamil and did not indicate that she referred to or relied upon the contents of Jamamil's hospital chart which contained the statements to the social worker. Defendant objected to these hearsay statements by Jamamil to the social worker which were used effectively by the prosecutor in her closing argument when she read the verbatim account from the hospital records, stating that Jamamil's account of the events of July 7, 2001, was more damaging than his in-court testimony as it was more complete and detailed. Thus, the failure to restrict Evid.R. 803(4) to its intended purpose was prejudicial.
{¶ 92} It was also erroneous for the trial court to admit testimony that Dr. Johnson, the Director of the Child Abuse Trauma Unit at Children's Hospital, who never examined or treated Layla, had a post mortem meeting with the prosecuting attorney, the pediatric surgeon, the pediatric radiologist, the youth advocate social worker, a children services' worker, and members of the intensive care unit and stated that the purpose of the meeting was "to assure we are all in agreement, nobody has an alternative explanation for this instance why this child died." Dr. Johnson then opined after discussion with these individuals, many of whom did not testify and one of whom actually prosecuted Nassar, that the child suffered intentional injuries of multiple impact and acceleration/deceleration, which is referred to in lay language as shaking. While such a meeting was proper in preparation for the trial, it was highly improper and prejudicial for the results of the meeting to be described to the jury. Each individual who was qualified could testify as to anything admissible under Evid.R. 702; however, describing the person's actions (obviously defendant's) who was responsible for the injuries and death as intentional was not proper even under a plain error rule. Admission of that testimony was erroneous and prejudicial.
{¶ 93} Assignments of error four and five should be sustained, and the case should be remanded to the trial court for a new trial.